UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SUNNYSIDE MANOR, INC.,** : | Civil Action No. 02-2902 (MLC) |
| **Plaintiff,** : | |
| v. : | **M E M O R A N D U M** |
| : | **O P I N I O N** |
| **THE TOWNSHIP OF WALL, et al.,** : | |
| **Defendants.** : | |

**HUGHES, U.S.M.J.**

      This matter comes before the Court upon Application by Plaintiff, Sunnyside Manor, Inc. ("Plaintiff"), to compel Daniel Swayze, an expert retained by Defendant Township of Wall ("Defendant"), to testify at deposition regarding the conversations he had or overheard between Defendant Board (the "Board"), Defendant Board attorneys and other professionals regarding the scope of Plaintiff's application to the Board for use variances in an attempted settlement of ongoing litigation. Defendant submitted opposition to the Application, contending that Mr. Swayze was an agent of Defendant during the closed-session meetings in which the above proposals were discussed and therefore, his presence does not breach the attorney/client privilege. The Court considered the submissions of the parties and conducted oral argument via telephone on November 30, 2005. For the reasons stated below, Plaintiff's Motion to Compel Discovery is denied.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      Since 1991, plaintiff Sunnyside Manor ("Plaintiff"), has operated a long term care program on less than one half acre (approximately seven percent) of a 6.37 acre land parcel (the

"Site")  it owns in the Township of Wall ("Defendant").  The Site is located in an area zoned for single-family dwellings.  The Site is not zoned for a nursing home.  However, located on the Site, is a manor style building, which houses and services approximately seventy elderly individuals with disabilities.  Residential homes surround the Site.

In 1997, Plaintiff applied to Defendant Board of Adjustment (the "Board") for use variances so it could adjoin an assisted living home to its existing long term care program.  On November 11, 2001, the Board rejected Plaintiff's requests, following twenty-four public hearings over a four-year period.  In June 2002, Plaintiff filed a Complaint against Defendant and the Board alleging violations of the Fourteenth Amendment and several federal statutes.  On October 16, 2003, the Court issued a Consent Order and subsequently closed the case.  Pursuant to this Consent Order, Plaintiff applied for use variances with an amended plan.  Daniel Swayze was retained by Defendant as an expert to review Plaintiff's various site plan proposals, to perform engineering reviews on the various site plan proposals, and to attend Board meetings and provide expert testimony at the Board hearings where Plaintiff's site plan proposals were considered.

On October 20, 2004, after fifteen additional public zoning hearings, some of which included Mr. Swayze testifying, the Board rejected these new variance requests.  In response, and upon Plaintiff's request, the Court re-opened the case on November 15, 2004 . Subsequently, on May 9, 2005, Plaintiff filed an Amended Complaint seeking declaratory and injunctive relief and monetary damages.  In the Amended Complaint Plaintiff alleges violations of the Fair Housing Act, the American Disability Act of 1990, and Substantive Due Process and Equal Protection under the Fourteenth Amendment.

Mr. Swayze was deposed and answered all question about his public testimony at various hearings but when asked about conversations with his client, the Board, at executive, non-public sessions, the attorney-client privilege was asserted. Plaintiff now seeks an order compelling Mr. Swayze to answer all questions.

**II.     DISCUSSION**

The present dispute arises from the parties' conflicting views on whether Daniel Swayze's conversations with Defendant attorneys, the Board, and other professionals working for Defendant, concerning Plaintiff's use variance proposals are protected by attorney/client privilege, or if such privilege was waived. Plaintiff contends that Mr. Swayze was a third-party expert retained by Defendant, thus any privilege which existed between Defendant and its attorneys was waived by his presence at the meetings. Therefore, Plaintiff claims that it may question Mr. Swayze about the substance of such conversations. Defendant, however, claims that Mr. Swayze, while an expert, functioned as an agent of Defendant during the preliminary closed-door meetings between the Board, Defendant and Defendant's attorneys during which Plaintiff's proposals were discussed. This, claims Defendant, prevents Plaintiff from questioning Mr. Swayze about such conversations at deposition or during trial.

**A. Attorney/Client Privilege**

Communications between an attorney and client are protected by the attorney/client privilege. The purpose of this privilege is to promote frank discussions between a client and his/her attorney to allow the attorney to best represent the client. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L. Ed. 2d 39 (1976). The privilege is not unconditional. It can be waived if the privileged information is communicated to outside parties. *U.S. v. Rockwell*

*International*, 897 F.2d 1255, 1265 (3d Cir. 1990).  However, the presence of any third party does not automatically constitute a waiver of the privilege.  For example,  "[c]ommunciations between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal counsel."  *Andritz Sprout-Bauer, Inc., v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-95, 101 *S.Ct.* 677, 685, 66 L.Ed.2d 584 (1981)).   Similarly, "[d]isclosure to agents retained by counsel to assist him or her in advising the client and handling legal matters does not operate as a waiver.  The privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests." *Id.* at 632 (quoting *X Corp. v. Doe*, 805 F. Supp. 1298 (E.D. Va. 1992)).

The instant case presents two issues: 1) Whether Mr. Swayze's presence at the closed-door executive meetings with the Board, Defendant and Defendant's attorneys constitutes a waiver of the attorney/client privilege; and  2) Whether Mr. Swayze's designation as an expert for trial waives any prior privilege which protected his conversations at the above-mentioned closed-door sessions.

      **B.**     **Mr. Swayze's Designation as an Agent/Interpreter**

As noted, the presence of an agent of the attorney or client does not constitute a waiver of the attorney/client privilege.  The party claiming a third party as an agent,

> bears the burden of showing that the person in question
> worked at the direction of the lawyer, and performed tasks
> relevant to the client's obtaining legal advice, while responsibility
> remained with the lawyer.  Morever, when the third party is
> a professional, such as an accountant, capable of rendering advice
> independent of the lawyer's advice to the client, the claimant
> must show that the third party served some specialized purpose

> in facilitating the attorney-client communications and was
> essentially indispensable in that regard.

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence P 503(a)(3)[01] at 503-31 to 38 (1993).   In considering the parameters of the agency exception to the wavier of attorney/client privilege, the Second Circuit Court of Appeals determined that conversations between counsel and a tax specialist, retained to help counsel understand the consequences of a pending client action, did not serve a specialized purpose in facilitating the attorney-client relationship.  *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).  While noting that *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) found the presence of an "interpreter" in an attorney/client meeting did not constitute waiver of the privilege, *id.* at 922, the Second Circuit distinguished the role of the tax specialist whom an attorney consulted for clarification on the tax consequences of its clients' actions. *Ackert*, 169 F.3d at 139.  The Court found that while the attorney interviewed the specialist to gain information to better advise his client, "the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client....[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Id.* at 139.

   Therefore, just because a communication between an attorney and a specialist prove helpful to the attorney's representation of his/her client does not mean that the communications are necessarily privileged.   However, the "inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between the attorney and the client." *Id.*

The Third Circuit Court of Appeals, in analyzing the clergy/communicant privilege found that "[a]s is the case with the attorney-client privilege, the presence of third parties, if essential to and in furtherance of the communication, should not void the privilege." *In re Grand Jury Investigations*, 918 F.2d 374, 384 (3rd Cir. 1990). Further, the Court found that

> the constructional rule that evidentiary privileges should be narrowly construed, that recognition of the clergy-communicant privilege in this circumstance depends upon whether the third party's presence is essential to *and* in furtherance of a communication to a member of the clergy. As is the case with consultants between attorneys and clients, the presence of multiple parties, unrelated by blood or marriage, during discussions with a member of the clergy may, but will not necessarily, defeat the condition that communications be made with a reasonable expectation of confidentiality in order for the privilege to attach. *Id.* at 386

In the present case, Mr. Swayze served a role more akin to *Kovel* and *In re Grand Jury* than *Ackert*, mainly that he served the crucial function of giving legal advice to the client on issues within his expertise, specifically engineering issues related to a proposed settlement. He was hired to evaluate Plaintiff's proposals, perform engineering reviews on the proposals, interpret the technical information contained within those proposals and to analyze those proposals to facilitate the representation by Defendant's attorneys. This advice was part and parcel of the attorney's advice to the client and was indispensable to defendant's consideration of settlement. As it was in *Kovel*, it was intended to improve the comprehension of the communications between the Defendant and their attorneys. Without Mr. Swayze's expertise evaluating the plan, neither Defendant nor the attorneys would have been able to effectively determine the proper course of action. Unlike *Ackert*, Mr. Swayze's conversations did not constitute simple advice about potential consequences of a client's action, but rather, Mr. Swayze

6

was an integral part of the relationship, necessary for the interpretation of the information needed to effectuate communication between Defendant and their attorneys.

In addition, there was an expectation of confidentiality during the closed-door sessions to discuss Plaintiff's various proposals. As mentioned above, this expectation of confidentiality weighs heavily against finding a waiver of the attorney/client privilege based on the presence of a third-party. Given the above, Mr. Swayze must be classified as an agent/interpreter of Defendant during the preliminary review of Plaintiff's use variance proposals and thus the privilege is not waived by his presence at the closed-door meetings between Defendant, the Board and Defendant's attorneys.

C.   Mr. Swayze's Recent Designation as an Expert for Trial

As noted above, Mr. Swayze was recently designated as an expert for trial for purposes of payment of fees. Plaintiff claims that Defendant cannot at once declare Mr. Swayze an expert and simultaneously deny such status. Plaintiff cites *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D.C. De. 2003) as authority that such simultaneous designation is improper. In *Keclco*, Defendant retained an expert to testify at trial. In doing so, Defendant provided documents to the expert for review to prepare for trial. These documents were not produced to Plaintiff as required by Fed. R. Civ. P. 26(a)(2) and 26(b)(4)(A).

Plaintiff subsequently sought relief from the Court to compel production of these documents after Defendant claimed non-disclosure based on attorney/client privilege. Almost simultaneously, the Magistrate Judge issued a report and recommendation suggesting that the claim for which the expert was testifying be dismissed. Therefore, Defendant claimed that the

expert was no longer one retained in preparation for trial and thus, documents reviewed by him were no longer required to be produced. The Magistrate Judge agreed. Reversing the Judge's decision, the District Judge found that Defendant could not "unwaive" the privilege to suit its needs. *Id.* at 179. The Court found that "[i]t would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively, as [Defendant] did in this instance when it used the allegedly privileged documents to arm its expert for testimony." *Id.*

The present case is distinguishable because Mr. Swayze was initially retained as an expert/interpreter to advise Defendant and its Board on Plaintiff's proposals for use variances as part of a proposed settlement. He was not initially retained as an expert in preparation of trial, or with the expectation that he would serve as such. While it is true that his designation changed during the course of his relationship with Defendant, it occurred in an opposite fashion than it did in *Kelc*o. The parties here, had a reasonable expectation that the information given to and the conversations which occurred between Mr. Swayze and Defendant and the Board would be held confidential. Such confidentiality is integral to the effective deliberation of the Board. The conversations focused on the evaluation and interpretation of Plaintiff's various proposals. They helped provide Defendant and the Board with the necessary information to determine whether to grant such proposals. The privilege does not cover, nor does anyone claim it should, any conversations or actions taken by Mr. Swayze during the public hearings, which occurred after these closed-door sessions, or in preparation for the current litigation.

Defendant's designation of Mr. Swayze as an expert for trial does not preclude Defendant from claiming attorney/client privilege to protect the conversations at the Executive Sessions of

8

the Board, which occurred prior to this designation. Such a change in status is not an attempt to "unwaive" the privilege as it was with the Defendant in *Kelco,* where the expert was originally retained to testify at trial and served no other purpose prior to that designation. In the present case, Mr. Swayze did not become an expert until after the privilege was claimed for the closed-door communications between Defendant, the Board and its attorneys.

The privilege Defendant now claims for the communications between Mr. Swayze and the Board is similar to that which protects communications between an expert and an attorney which cover trial strategy of the attorney. *See Cordy v. Sherwin-Williams*, 156 F.R.D. 575, 577 (D.N.J. 1994) ("mental impressions of an attorney that are disclosed to an expert remain protected by privilege")(citing *Bogosian v. Gulf Oil Corp*., 738 F.2d 587 (3d Cir. 1984)). Such communications are deemed privileged because they are not part of the expert's trial testimony preparation. Similarly, the communications between an attorney and an agent of the client should be considered privileged as they were not used to prepare the expert for trial, they are expected to remain confidential and are necessary for the effective execution of Board activities. Therefore, Mr. Swayze's designation as an expert for trial in the Court's prior order does not require the Court to now deem the prior privilege, which attached to the communications at the closed-door sessions, waived.

### III.  CONCLUSION

For the reasons expressed herein, the Court finds that: (1) Mr. Swayze was an agent of Defendant during the period in which Defendant, the Board and its attorneys were considering whether or not to accept Plaintiff's use variance proposal and therefore his communications with

Defendant, the Board and its attorneys are protected by attorney/client privilege; and (2) Mr. Swayze's later designation as an expert for trial does not require the Court to deem the privilege, which attached to the above communications, waived.

As a post-script, the Court notes that important public policy considerations inform the preservation of the attorney-client privilege under these particular circumstances. Boards must feel secure in confidentially discussing a course of legal action with its attorney <u>and</u> its agent when providing necessary expertise. Otherwise, it is the Court's view that little public business of this sort would ever be accomplished.

An appropriate order accompanies this Memorandum Opinion.

Dated: December 22, 2005.